### In the Matter of D.T.M.

No. 2–96–097–CV.

Court of Appeals of Texas,
Fort Worth.

July 3, 1996.

Bradford L. Shaw, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Dan Risinger, Assistant District Attorney, Fort Worth, for Appellee.

Before DAUPHINOT, J., and H. TOD WEAVER (Retired) and CHUCK MILLER, JJ. (Sitting by Assignment).

## OPINION

H. TOD WEAVER, Justice (Retired).

This is an appeal from an order for involuntary temporary mental health services for appellant D.T.M. The trial court, having found that D.T.M was mentally ill as defined in the Texas Mental Health Code [1] and that he required hospitalization, ordered that he be committed as an in-patient to the Waco VA Hospital for a period not to exceed 90 days.

D.T.M. attacks the trial court's order by two points of error. Under point one, he claims the trial court had no jurisdiction to proceed with the hearing because one of the Certificates of Medical Examination filed in the case was facially invalid. By point two, he claims there was no evidence or that there was insufficient evidence to support the trial court's finding and conclusion that he was mentally ill. We affirm.

The application for temporary mental health services for D.T.M. was filed on February 29, 1996. The application was signed by his sister. Filed with the application was a Certificate of Medical Examination signed by Dr. Randy Herring together with his attached affidavit. On March 5, 1996, there was also filed in the case a Certificate of Medical Examination signed by Dr. Michael F. Cleary together with his attached affidavit. D.T.M. concedes in his brief that these two certificates were timely filed with the court and were on file at the time of the hearing on the application.

A hearing on the application was held by the court without a jury on March 7, 1996. D.T.M. and his attorney were present at the hearing and announced ready. The State called D.T.M. and four other witnesses, being two of D.T.M.'s sisters; Marshall Hayes, a representative of the Tarrant County

---

1. The power of the State respecting court-ordered mental health services for a person is governed by TEX.HEALTH & SAFETY CODE ANN. §§ 571.001—577.019, Subtitle C (Vernon 1992 & Supp.1996), known as the TEXAS MENTAL HEALTH CODE, herein referred to as the "Code."

MHMR; and Dr. Michael F. Cleary, a psychiatrist who testified as an expert witness by stipulation. Only D.T.M. testified on his behalf. No exhibits were admitted into evidence, and the record does not reflect that the two Certificates of Medical Examination were offered or admitted into evidence.

On March 20, 1996, the trial court signed an Amended Order For Temporary Mental Health Services that ordered appellant committed as an in-patient for observation and/or treatment at the Waco VA Hospital for a period not to exceed 90 days from the date of the hearing. It is from this order that appellant has perfected this appeal. Findings of Fact and Conclusions of Law were signed by the trial court on March 26, 1996.

Portions of the Code, as they pertain to this appeal, are summarized below:

(14) "Mental illness" means an illness, disease, or condition, other than epilepsy, senility, alcoholism, or mental deficiency, that:

(A) substantially impairs a person's thought, perception of reality, emotional process, or judgment; or

(B) grossly impairs behavior as demonstrated by recent disturbed behavior.

TEX.HEALTH & SAFETY CODE ANN. § 571.003(14) (Vernon 1992).

Proceedings for court-ordered mental health services are commenced by filing an application with the county clerk. TEX. HEALTH & SAFETY CODE ANN. § 574.001 (Vernon Supp.1996). The form for the application is prescribed in section 574.002. TEX. HEALTH & SAFETY CODE ANN. § 574.002 (Vernon 1992).

A hearing on an application for court-ordered mental health service may not be held unless there are on file with the court at least two certificates of medical examination for mental illness completed by different physicians each of whom has examined the proposed patient during the preceding 30 days. At least one of the physicians must be a psychiatrist if a psychiatrist is available in the county.

TEX.HEALTH & SAFETY CODE ANN. § 574.009(a) (Vernon 1992).

If the certificates required under this section are not on file at the time set for the hearing on the application, the judge shall dismiss the application. . . .

TEX.HEALTH & SAFETY CODE ANN. § 574.009(d) (Vernon Supp.1996).

The requirements for the certificates are set out in section 574.011:

(a) A certificate of medical examination for mental illness must be sworn to, dated, and signed by the examining physician. The certificate must include [among other listed items]:

. . . .

(4) a brief diagnosis of the examined person's physical and mental condition;

. . . .

(6) an accurate description of the mental health treatment, if any, given by or administered under the direction of the examining physician; and

(7) the examining physician's opinion that:

(A) the examined person is mentally ill; and

. . . .

(i) is likely to cause serious harm to himself;

(ii) is likely to cause serious harm to others; or

(iii) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make rational and informed decisions as to whether or not to submit to treatment.

. . . .

(e) The certificate must include the detailed reason for each of the examining physician's opinions under this section.

TEX.HEALTH & SAFETY CODE ANN. § 574.011 (Vernon 1992).

General provisions relating to a hearing on the application are contained in section 574.031:

(e) The Texas Rules of Civil Evidence apply to the hearing unless the rules are inconsistent with this subtitle.

. . . .

(g) The hearing is on the record, and the state must prove each element of the applicable criteria by clear and convincing evidence.

TEX.HEALTH & SAFETY CODE ANN. § 574.011(e, g) (Vernon 1992).

(a) The court shall enter an order denying an application for court-ordered temporary or extended mental health services if after a hearing the court or jury fails to find, from clear and convincing evidence, that the proposed patient is mentally ill and meets the applicable criteria for court-ordered mental health services.

TEX.HEALTH & SAFETY CODE ANN. § 574.033(a) (Vernon 1992).

Requirements for issuing court-ordered temporary mental health services are contained in section 574.034:

(a) The judge or jury may determine that a proposed patient requires court-ordered temporary mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.[2]

(b) The judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision.

(c) To be clear and convincing under this section, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of ability to function.

TEX.HEALTH & SAFETY CODE ANN. § 574.034(a, b, c) (Vernon 1992).

D.T.M.'s arguments under point of error one are based on and isolated to his attack on the validity of the Certificate of Medical Examination signed by Dr. Herring. He makes no attack on Dr. Cleary's certificate under his first point of error.

D.T.M.'s attack against Dr. Herring's certificate is twofold. His first complaint is that the certificate does not comply with the mandatory language of section 574.011(b) which states, "[t]he examining physician must specify in the certificate which criterion listed in Subsection (a)(7)(B) forms the basis for the physician's opinion." TEX.HEALTH & SAFETY CODE ANN. § 574.011(b) (Vernon 1992).[3] D.T.M., citing *In re J.S.C.*, 812 S.W.2d 92 (Tex.App.—San Antonio 1991, no writ), contends the certificate fails to specify which criterion formed the basis of Dr. Herring's opinion because the criteria are listed in the disjunctive. In that case, the trial court used a fill-in-the-blank form of judgment which found three alternative criteria formed the basis of the decision. The judgment found each of the criteria in the disjunctive. The appellate court stated that if the trial court had found all three criteria formed the basis of commitment, then the judgment should have stated the findings in the conjunctive, rather than the disjunctive. *Id.* at 96. That case involved only an attack on the trial court's judgment and we do not consider its rationale applicable to D.T.M.'s attack on the facial invalidity of Dr. Herring's certificate under the circumstances of this case.

D.T.M.'s second complaint regarding Dr. Herring's certificate is that it did not include the detailed reason for each of the doctor's opinions as required by section 574.011(e).

---

2. We note that the matters which may be determined by the judge or jury under subsection (a) are identical to the matters on which the examining physician's opinion must be included in his certificate under section 574.011(a)(7).

3. Appellant does not dispute the facial validity of Dr. Herring's certificate in regard to section 574.011(a).

Dr. Herring expressed four opinions in his certificate:

1) [D.T.M.] is mentally ill; and

2) as a result of that illness [D.T.M.]:

A. *is* likely to cause serious harm to himself;

B. *is* likely to cause serious harm to others; or

C. *will*, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of [his] ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

Dr. Herring's affidavit attached to the Certificate of Medical Examination states the following facts in support of his opinions:

[Patient] has a [history of] mental illness. For the past two months he has not taken his medications. [Patient] was functioning well but after not taking his [medications] he stopped taking care of himself. He has lost almost 50 lbs. He wanders the streets at night and has been hit by traffic at least once. He has also become abusive and assaultive to family members who try to help him.

D.T.M. claims that none of the foregoing statements of fact provide any basis for the doctor's opinion that he is mentally ill, that there is only a conclusory statement that he has a past history of mental illness which does not provide a factual basis of how his condition meets the definition of "mental illness" as defined in section 571.003(14).

In relation to the opinion that D.T.M., as a result of his mental illness, is likely to cause serious harm to himself, D.T.M. concedes that there is a factual proposition about his being hit by a car, but that there are no facts showing how his being hit by a car was the result of his mental illness.

D.T.M. also concedes there is a factual proposition that he is likely to cause serious harm to others, but that there is no factual basis showing how his assaultive behavior is a result of his mental illness.

Finally, with respect to Dr. Herring's opinion that D.T.M. will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment, D.T.M. asserts that the affidavit fails to state facts to support the opinion, and that the facts listed merely state that appellant has lost 50 pounds, been off his medication for two months, and that he had been functioning well before he stopped taking his medications.

■ In summary, D.T.M.'s contention under point of error one is that because the certificate signed by Dr. Herring did not specify which criterion forms the basis for Dr. Herring's opinions as required by section 574.011(b) and did not include the detailed reason for each of his opinions as required by section 574.011(e), the certificate is void. He then apparently argues that Dr. Herring's certificate, being void, could not be treated as a certificate on file at the time of the hearing as required by section 574.009(a), that the judge should have dismissed the application as required by section 574.009(d), and was therefore without jurisdiction to order his commitment.

We do not find any of the authorities cited by D.T.M. to be supportive of the proposition that Certificates of Medical Examination, with defects such as those alleged by appellant in this case, are void on their face and we do not so interpret the law. We are not oblivious to the legislative intent expressed in section 574.011 which provides that the physician must specify the certain criterion in the certificate and that the certificate must include the detailed reason for his opinions. However, we are reluctant to hold that alleged defects in the certificates, due to the failure of the certificates to strictly comply with that section, can be first attacked on appeal. We are inclined to view the certificates as being more analogous to required pleadings.

■ The State contends that when there are two certificates on file, as there were in this case, and where D.T.M. alleged for the

first time on appeal that one or both are defective, that he has waived his objection and accepts the certificates and the court's jurisdiction for the purpose of the hearing on the application by failing to raise his objections with the trial court. We agree. As mentioned above, D.T.M. concedes that both certificates, signed by Drs. Herring and Cleary, were timely filed and were on file at the time of the hearing. His attorney announced ready for trial. The record reflects that no objections were made to, and no motions were filed, by D.T.M.'s attorney respecting these certificates, either before or during the hearing on the application.

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion calling the trial court's attention to the complaint. TEX.R.APP.P. 52(a). Attacks against the adequacy of the pleadings are waived by not making an objection to inform the trial court of the nature of the complaint. *Hart v. Berko, Inc.,* 881 S.W.2d 502, 509, (Tex.App.—El Paso 1994, writ denied). Even constitutional arguments are waived at the appellate level if issues were not before the trial court. *Armstrong v. Randle,* 881 S.W.2d 53, 58, (Tex.App.—Texarkana 1994, writ denied). In a civil case, fundamental error occurs only in rare instances in which the record shows on its face that the trial court lacked jurisdiction or where a public interest is directly and adversely affected. *In re O. L.,* 834 S.W.2d 415, 420, (Tex.App.—Corpus Christi 1992, no writ).

We hold the alleged defects in Dr. Herring's certificate, of which D.T.M. complains for the first time on this appeal, are not jurisdictional, that the trial court had jurisdiction to hold the hearing on the application, and further, that D.T.M. waived those objections by not timely objecting to them at the trial level. Point of error one is overruled.

Under point of error two, D.T.M. claims there was no evidence or that there was insufficient evidence to support the trial court's finding and conclusion that he was mentally ill. He contends it was incumbent upon the State to affirmatively prove that he did not fall within the exception to the definition of mental illness contained in section 571.003(14), specifically that his thought, perception of reality, emotional process, judgment or behavior was not impaired by "epilepsy, senility, alcoholism or mental deficiency." D.T.M. further contends the record is devoid of any testimony or other proof that he fell within that exception.

The trial court found and concluded that D.T.M. "is mentally ill as defined by the Texas Mental Health Code."

The only expert testimony bearing on D.T.M.'s mental illness was that of Dr. Cleary, a psychiatrist. The briefs of both D.T.M. and the State under point of error two, regarding the evidence relative to appellant's mental illness, are limited to arguments bearing on the following testimony of Dr. Cleary:

[Direct Examination]

Q. Have you formed a diagnosis concerning [D.T.M.'s] mental condition?

A. Yes.

Q. What is your diagnosis?

A. Psychosis, not otherwise specified.

Q. Is this a mental illness under the Mental Health Code?

A. It is.

Q. How does [D.T.M.] meet the definition?

A. This condition that [D.T.M.] has is in my opinion a mental illness because [D.T.M.] shows disturbance of thought, perception of reality, emotional process and judgment in addition to behavior.

Q. Is [D.T.M.] substantially impaired in these respects?

A. [D.T.M.] is. [D.T.M.] is substantially impaired in regard to his thought process, in regard to his perception of reality and in regard to judgment and also behavior.

[Cross Examination]

Q. So you don't know exactly what it is that [D.T.M.] has at this time; is that what your testimony is?

A. I know that [D.T.M.] has a psychotic state. And beyond that, I'm not speci-

fying whether it's a Bipolar disorder with psychotic features or whether it may be a schizophrenic psychosis.

D.T.M. does not argue that his thought process, perception of reality, emotional process, and judgment are not substantially impaired and does not question that his behavior is grossly impaired. Rather, D.T.M. contends that the evidence does not sufficiently show that his condition was not caused by epilepsy, senility, alcoholism or mental deficiency.

Before the 72nd Legislature codified the Texas Mental Health Code in 1991, "mental illness" was defined as follows:

(8) "Mental illness" means an illness, disease, or condition which either:

(A) substantially impairs a person's thought, perception of reality, emotional process, or judgment; or

(B) grossly impairs behavior as manifested by recent disturbed behavior.[4]

Thus, the definition of "mental illness" is the same under the prior statute and the current version, except for the language of "other than epilepsy, senility, alcoholism, or mental deficiency," which was added in 1991 under TEX.HEALTH & SAFETY CODE ANN. § 571.003(14) (Vernon 1992). We believe it may be reasonably inferred, from the change in the definition of "mental illness," that the legislature did not intend for people with epilepsy, senility, alcoholism, or mental deficiency to be committed under the Code based upon impairment caused by those conditions.

In this case, there is no evidence in the record to indicate that D.T.M. suffered from or that his condition as testified to by Dr. Cleary was caused by, was contributed to by, or resulted from epilepsy, senility, alcoholism, or mental deficiency. Dr. Cleary diagnosed D.T.M.'s mental condition as "Psychosis, not otherwise specified," and testified that such was a mental illness under the Code. The trial court also found D.T.M. was mentally ill as defined by the Code. Under these conditions, we hold the Amended Order For Temporary Mental Health Services en-

tered by the trial court is supported by clear and convincing evidence. Point of error two is overruled.

We sustain the actions of the trial court in entering the Amended Order For Temporary Mental Health Services.

---

**4.** Act of April 27, 1983, 68th Leg., R.S., ch. 47, § 4(8), 1983 Tex.Gen.Laws 211, 213, *amended by* Act of May 10, 1991, 72nd Leg., R.S., ch. 76, § 1, 1991 Tex.Gen.Laws 515, 569 (current version recodified at TEX.HEALTH & SAFETY CODE ANN. § 571.003(14) (Vernon 1992)).